IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| JUDY YOUNG and ROBERT YOUNG, Plaintiffs, v. KELLY & BRAMWELL, P.C., JARED BRAMWELL, and NATIONAL WOOD PRODUCTS, INC., Defendants. | MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS<br><br>Case No. 1:17-CV-144 TS<br><br>District Judge Ted Stewart |
|---|---|

This matter is before the Court on a Motion for Partial Summary Judgment filed by Plaintiffs Judy and Robert Young, a Motion for Summary Judgment filed by Defendants Kelly & Bramwell, P.C. and Jared Bramwell (collectively, "Defendants"),[1] and a Motion to Vacate Deadlines and Vacate Scheduling Order. For the reasons discussed below, the Court will grant Defendants' Motion as to Plaintiffs' claims under the Fair Debt Collection Practices Act ("FDCPA"), decline to exercise jurisdiction over Plaintiffs' state-law claims, and dismiss those claims without prejudice.

I. BACKGROUND

Plaintiffs bring this action against Defendants as a result of Defendants' effort to collect a debt on behalf of National Wood Products, Inc. Plaintiffs assert claims under the FDCPA and the Utah Consumer Sales Practices Act.

---

[1] Defendant National Wood Products, Inc. was previously dismissed. *See* Docket No. 18.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[3] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[4]

## III. DISCUSSION

A.   FDCPA

The FDCPA prohibits certain practices by debt collectors. The Act defines debt collectors, in pertinent part, as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[5] The term "debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."[6] The Act, by its plain

---

[2] Fed. R. Civ. P. 56(a).

[3] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[4] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[5] 15 U.S.C. § 1692a(6).

[6] *Id.* § 1692a(5).

language, distinguishes between consumer debts—debts that are primarily for personal, family, or household purposes—and commercial or business debts.[7]

"The FDCPA establishes two alternative predicates for 'debt collector status': 1) engaging in debt collection as the 'principal purpose' of the entity's business; or 2) engaging in debt collection 'regularly.'"[8] Plaintiffs bear the burden of proving Defendants' debt collector status.[9]

There is no evidence that the principal purpose of Defendants' business is debt collection. Rather, the principal purpose of Defendants' business is the practice of law, including representing clients in various civil matters.[10] Thus, the Court must consider whether Defendants regularly engage in debt collection.

The Tenth Circuit has identified a non-exhaustive list of factors a court "must consider in determining whether an attorney or law firm 'regularly' engages in debt collection such as to qualify as a 'debt collector' within the meaning of the FDCPA."[11] These include:

> (1) the absolute number of debt collection communications issued, and/or collection-related litigation matters pursued, over the relevant period(s), (2) the frequency of such communications and/or litigation activity, including whether any patterns of such activity are discernible, (3) whether the entity has personnel

---

[7] *See First Gibraltar Bank, FSB v. Smith*, 62 F.3d 133, 135–36 (5th Cir. 1995) (district court properly dismissed guarantor's FDCPA claims because guaranty was of debts arising out of a commercial transaction); *see also Goldman v. Cohen*, 445 F.3d 152, 154 n.1 (2d Cir. 2006) ("[A]ctions arising out of commercial debts are not covered by the protective provisions of the FDCPA.").

[8] *James v. Wadas*, 724 F.3d 1312, 1316 (10th Cir. 2013) (quoting *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 61 (2d Cir. 2004); 15 U.S.C. § 1692a(6)).

[9] *Goldstein*, 374 F.3d at 60.

[10] Docket No. 27-2 ¶ 5; *see also* Docket No. 32 Ex. P-18, at 12:11–23.

[11] *James*, 724 F.3d at 1318.

specifically assigned to work on debt collection activity, (4) whether the entity has systems or contractors in place to facilitate such activity, and (5) whether the activity is undertaken in connection with ongoing client relationships with entities that have retained the lawyer or firm to assist in the collection of outstanding consumer debt obligations.

Facts relating to the role debt collection work plays in the practice as a whole should also be considered to the extent they bear on the question of regularity of debt collection activity (debt collection constituting 1% of the overall work or revenues of a very large entity may, for instance, suggest regularity, whereas such work constituting 1% of an individual lawyer's practice might not). Whether the law practice seeks debt collection business by marketing itself as having debt collection expertise may also be an indicator of the regularity of collection as a part of the practice.[12]

Considering these factors, the Court concludes that Defendants are not debt collectors under the FDCPA.

Defendants have identified a total of five debt collection cases during a five-year period from February 2013 to February 2018.[13] This represents 0.56% of the total number of cases Defendants handled during those years[14] and the amount earned from those cases equaled 0.22% of Defendants' total gross revenue for this time period.[15]

Defendants also state that they have no personnel specifically assigned to work on debt collection activity and have no systems or contractors in place to facilitate such activity.[16] Further, Defendants state that they do not have clients whose principal purpose involves debt collection activities that are governed by the FDCPA and do not have any clients who regularly

---

[12] *Id.* at 1317–18 (quoting *Goldstein*, 374 F.3d at 62–63).

[13] Docket No. 27-2 ¶ 28; Docket No. 27-15 ¶ 28.

[14] Docket No. 27-2 ¶ 28; Docket No. 27-15 ¶ 28.

[15] Docket No. 27-2 ¶ 37; Docket No. 27-15 ¶ 37.

[16] Docket No. 27-2 ¶¶ 7, 10; Docket No. 27-15 ¶¶ 7,10.

engage in collection activities governed by the FDCPA.[17]  Further, the action taken here was the first and, to date, only matter Defendants handled for National Wood Products, Inc.[18]

This evidence fails to demonstrate that Defendants engage in debt collection with any regularity.  Rather, Defendants have handled a handful of debt collection cases over the past five years, which made up half of one percent of the total cases and less than a quarter of one percent of gross revenue during this time.[19]  "Such debt collection activity is minimal."[20]  Further, Defendants do "not have any system or personnel to assist with debt collection activity"[21] and do not have clients who engage in collection activities governed by the FDCPA.

Plaintiffs argue that the Court cannot rely on the affidavits submitted by Defendants because they are conclusory and lack evidentiary support.  However, Rule 56(c) clearly allows Defendants to submit and the Court to consider the affidavits.  To the extent Plaintiffs argue that it is impermissible to rely on these affidavits, they are incorrect.[22]  Further, Defendants are "not required to further substantiate [their] affidavit[s]—evidence the district court [is] entitled to consider—with other evidence."[23]  As the moving party, it was Defendants' burden to come

---

[17] Docket No. 27-2 ¶¶ 8, 9; Docket No. 27-15 ¶¶ 8, 9.

[18] Docket No. 27-2 ¶ 3; Docket No. 27-15 ¶ 3.

[19] Even taking the higher number of cases identified in responding to Plaintiffs' Interrogatory No. 2, the Court's conclusion would remain the same.

[20] *James*, 724 F.3d at 1319 (finding debt collection activity minimal where it made up less than one percent of attorney's total practice over the previous ten years).

[21] *Id.* at 1319.

[22] *Id.* ("To the extent James claims that it was impermissible for the district court to rely on Wadas's affidavit or her response to interrogatories, James is mistaken.").

[23] *Id.*

forward with evidence showing they did not regularly engage in debt collection.[24] As set forth above, they did so.

Having done so, the burden shifts to Plaintiffs to demonstrate a genuine issue for trial. Because Plaintiffs bear the burden of demonstrating Defendants status as a debt collector, Plaintiffs are "required, in responding to [Defendants'] motion for summary judgment, 'to make a showing sufficient to support a determination that [Defendants were] . . . debt collector[s] at the time of the challenged communication.'"[25] Plaintiffs have not done so. Plaintiffs primarily rely on a statement from Defendants' website, which states that Defendants provide debt collection services. However, debt collection is just one of the practice areas listed on Defendants' website and does not answer the question as to the frequency Defendants engaged in debt collection under the FDCPA. Moreover, nothing in these statements demonstrate that Defendants market themselves "as having debt collection expertise," one of the factors identified by the Tenth Circuit[26] Additionally, the statement on Defendants' website indicates that it represents both creditors and debtors, not just creditors.[27] Plaintiffs' attempt to use this general statement about debt collection services to support the conclusion that Defendants regularly engaged in debt collection activities is insufficient to survive summary judgment.

Plaintiffs point to other internet statements that similarly identify Defendants as providing debt collection services. Again, these statements merely show that Defendant Bramwell's practice includes debt collection, but they do not demonstrate that Defendants

---

[24] *Id.*

[25] *Id.* (quoting Goldstein, 374 F.3d at 60–61).

[26] *Id.* at 1318.

[27] Docket No. 32 Ex. P-16, at 16.

6

regularly engage in debt collection. While the Avvo and People Background Check websites list debt collection as being 20% of Defendant Bramwell's practice,[28] it is unclear where this information came from and it is not supported by the record. "Accordingly, the scant evidence [Plaintiffs] submitted in opposition to summary judgment is insufficient to create a genuine issue of material fact."[29]

B.     STATE-LAW CLAIM

The Court's jurisdiction in this case is based on federal question, with supplemental jurisdiction over Plaintiffs' claim under the Utah Consumer Sales Practices Act. As set forth above, Plaintiffs' federal-law claim has been resolved in Defendants' favor, leaving only this claim under Utah law. The Tenth Circuit has suggested "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."[30] Having considered the relevant factors,[31] the Court will decline to exercise its discretion over Plaintiffs' remaining state-law claim and will dismiss it without prejudice.

---

[28] *Id.* at 4–5.

[29] *James*, 724 F.3d at 1320.

[30] *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quoting *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998)); *see also* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction.").

[31] *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims.").

C. ATTORNEY'S FEES

Defendants seek attorney's fees under the FDCPA. The FDCPA provides: "On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs."[32] Having carefully considered the record in this case, the Court cannot conclude that Plaintiffs brought this action in bad faith and for the purpose of harassment. Therefore, the Court declines to award Defendants their attorney's fees under the FDCPA.[33]

IV. CONCLUSION

It is therefore

ORDERED that Defendants' Motion for Summary Judgment (Docket No. 27) is GRANTED IN PART as set forth above. It is further

ORDERED that Plaintiffs' Motion for Partial Summary Judgment (Docket No. 28) is DENIED. It is further

ORDERED that Plaintiffs' Motion to Vacate Deadlines and Vacate Scheduling Order (Docket No. 43) is DENIED AS MOOT.

DATED this 18th day of June, 2019.

BY THE COURT:

Ted Stewart
United States District Judge

---

[32] 15 U.S.C. § 1692k(a)(3).

[33] To the extent Defendants may have the ability to seek attorney's fees in relation to Plaintiffs' state-law claim, this Order should not be read as expressing an opinion on that issue.